### EX PARTE HOMER FLEMING.

No. 8633.   Decided April 16, 1924.

1.—Habeas Corpus—Bail—Rule Stated—Burden of Proof.

No inference can be indulged against accused on a question of bail. He is entitled thereto as a matter of right, unless the State can show to the contrary and to do this the burden is on the State. Following: Ex Parte Townsley, 87 Texas Crim. Rep., 252.

2.—Same—Dying Declarations—Predicate.

Where the written statement of the deceased had been turned over to the district attorney and was in his possession at the time of the hearing, he should have submitted it for inspection to the relator, as the same might be offered in evidence either for or against the party charged with the homicide, after proper predicate is laid. Bail is granted.

Appeal from the District Court of Kimble County in vacation. Tried below before the Honorable J. H. McLean.

Appeal from a habeas corpus proceedings denying bail.

The opinion states the case.

*M. E. Blackburn, Dave Watson,* and *Coke R. Stevenson,* for relator.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney and *Fred E. Knetsch,* County Attorney, and *Wilson & Wilson,* for the State.

HAWKINS, JUDGE.—Relator being under indictment charged with the murder of his wife sought relief upon bail through habeas corpus proceedings. From an order denying bail this appeal is prosecuted.

The killing occurred at the home of relator, where his father, O. B. Fleming, also resided. The latter was present at the homicide and although an eyewitness his testimony was not sought by either the State or relator upon this hearing. The facts surrounding the killing were shown through proof of the dying declaration of deceased. The wound causing the death was produced by a shot from a pistol. The ball entered near the top of the shoulder, ranged downward between the ribs and muscles of the back until it struck the hip bone when it turned into the intestines, death resulting some hours later. The statement of deceased, in substance, was that she was preparing to go on a visit to some of her relatives; that relator entered the house and asked their small son to go with him to see some of his relatives to which the child demurred, stating that he was going with his mother; that relator then undertook forcibly to take the child with him; that O. B. Fleming interfered; that the child screamed and deceased came into the room where they were from the room where she had been dressing; that when she came into the room relator drew his pistol, whereupon deceased picked up an iron rod or poker and attempted to strike the pistol out of his hand; that the pistol was discharged and deceased thought at that time relator was firing at his father; that the child got loose from relator and ran into another room; that deceased followed him and as she stooped to take hold of the child she glanced up and saw relator fire back at her from the other room. The witnesses in undertaking to repeat the language of deceased in her dying statement say that she said when relator undertook to take the child forcibly O. B. Fleming interfered and that she heard them talking about it and that was what caused her to enter the room. There is nothing in the record to indicate the character of interference on the part of O. B. Fleming except as it may be inferred from deceased's statement that she thought relator first fired at his father. It appears in another portion of the statement that deceased said at the time the first pistol shot was fired *"they* were scuffling over the child." It is not clear whether O. B. Fleming was engaged in this scuffle. The reasonable inference from deceased's statement that she

97 T. C.—20.

thought relator was firing at his father would be that the latter was engaged in it, otherwise why the impression made on her.

In determining whether this case is bailable we are compelled to pass upon it from the record made although we regret that, as is too frequently the case, the facts appear to have been imperfectly developed upon the habeas corpus hearing. Some evidence is in the record which was objected to at the time and which we are inclined to think was improperly admitted and this will not be considered. It does not appear that relator was objecting to the contemplated visit of his wife, but for some reason preferred that the child go with him. The child wished to go with its mother and relator was forcibly undertaking to prevent this when deceased came into the room and the shooting followed almost immediately. The record is silent as to where O. B. Fleming was, or what he was doing, when the shot was fired that struck deceased, although the record shows that he had testified upon an inquest proceeding and was available to the State upon this hearing. No inference can be indulged against accused on a question of bail. He is entitled thereto as a matter of right unless the State can show to the contrary, and to do this the burden is on the State. See Ex Parte Townsley, 87 Texas Crim. Rep., 252, 220 S. W. Rep., 1092, and authorities therein cited. Harris v. State, 90 Texas Crim. Rep., 246, 234 S. W. Rep., 398. While it is not the purpose of this opinion to discuss the alleged errors in the rulings of the court in the habeas corpus hearing there is a matter to which we refer as bearing upon it. Subsequent to the oral statement made to the physician by Mrs. Fleming, and testified to by him, she made a written dying declaration to the county attorney. A proper predicate for its introduction was laid by relator through the county attorney's evidence. This written statement had been turned over to the district attorney and was in his possession at the time of the hearing, but he declined to introduce it, or to submit it for inspection or introduction by relator. A dying declaration may be offered in evidence either for or against a party charged with a homicide after proper predicate is laid; Article 808 C. C. P. expressly so declares. No inference favorable to the State can be drawn from the suppression by its representative of the written declaration of deceased, but rather the learned judge before whom this hearing was had could with propriety have concluded that such written declaration contained statements favorable to relator, otherwise it would not have been withheld.

We think under the rule controlling the question whether bail should be granted or denied, this case is brought within the former and not the latter class.

The order denying bail is reversed, and bail granted in the sum of $15,000.

*Bail granted.*